Good morning, Mr. Gattone. You'd like to proceed? Thank you, Your Honor. May it please the Court, my name is Paul Gattone, and I'm here today representing the appellant Nubian Amin Ra. And if I could, please, I'd like to reserve a couple minutes at the end for some rebuttal. Your Honors, I'm certain that you have questions, but as you've read in the pleadings, the issue here clearly is an interpretation of the Iqbal case at the Supreme Court, and whether the subsequent amended pleadings that we filed on my client's behalf, you know, stated a plausible claim for relief on its face. And I think that some of the confusion, I think, and maybe why we're here is I think that my understanding and our argument has been that there is a conflict between Rule 8.2 of the Rules of Civil Procedure and the ruling in Iqbal, and there needs to be determination as to what it means to take a case beyond the speculative level and take it to the plausible level. We were allowed by the court, the lower court, an opportunity, actually two opportunities to amend the complaint, and we did that. On each subsequent opportunity, the court had narrowed our arguments by chipping away at it, but had also, we had added more facts to it, enough facts that on its face, we stated a short and plain statement of the facts that show that we have a plausible claim for relief against the Cochise County defendants and against the Federal defendants. Counsel, I've got to tell you, I am respectfully having trouble with your argument, with the possible exception of the excessive force issue, which does trouble me. It seems to me when you look at the elements of each of the offenses that you've alleged, like malicious prosecution, intentional affliction of emotional harm, and on and on, you have failed to allege one or more of the essential elements of each of those crimes, or not crimes, but causes of action. Do you agree with that, or am I misreading something? For example, in malicious prosecution, in order to allege that, you've got to allege criminal prosecution that's terminated in favor of the plaintiff, with defendants as prosecutors, actuated by malice, without probable cause, and causing damage. You don't allege there's probable cause, and moreover, the grand jury indicted for probable cause, and you make allegations that they acted with malice. Well, Your Honor, I think that Under that circumstance, aren't you toast as far as malicious prosecution, regardless of Iqbal? I think that I would respectfully disagree. In the complaint itself, we deal, obviously we all agree that there was a criminal prosecution, and it terminated in favor of the plaintiff in both the cases. The charges were dismissed either by the court or by the government entity, the prosecuted entity, voluntarily. We'd also pled that during the time when the government authorities were putting together the case against Mr. Amin Ra, two-year investigation that they met in this border alliance, that they talked about the activity of his group, the Black Supremacy Nation, that they brought in newspaper articles about him, that they obviously that they were focusing on him, other than for this alleged criminal activity. And we know that as far as, so it would be our argument, Your Honor, that that would be actuated by malice because they show ultimately there was no probable cause. Some of the state charges were dismissed by the court itself for a lack of probable cause. Others were dismissed on the government's own entity. And as for causing damages, for an extended period of time, Mr. Amin Ra was in the county jail for almost a year, away from his family. He has small children and a wife. Then he's, after that case terminates in his favor, he's transferred to the Federal Court. And he spends another good period of time in Federal custody before again those charges are terminated in his favor and he's allowed to move on with his life. But it's hard to say that there's not malice there when we show the circumstances under which the cases were developed, that certainly it, even though that they will argue that there may have been probable cause initially, I think the court's determination is that there were not probable cause for the majority of the charges against him. Why aren't you mixing up pleading with what ultimately happened? Well, Your Honor, I'm not sure that I'm mixing the pleadings with ultimately what happened because I think that that's part of the issue that we have here is that even with Iqbal, there's not a heightened pleading requirement that I have to prove my case in the pleadings. I think that in the pleadings we have to show sufficient facts that they're able to respond, and we know that the government, both levels of government responded multiple times. They were able to file motions to dismiss. They were able to file motions for summary judgment. It's a little bit beyond imagination that then they didn't have enough information to say deny, deny, deny in an answer. The fact that they were able to respond, does that take it beyond the Iqbal threshold of the speculative level? What are the facts other than conclusory facts, such as with respect to the First Amendment claim, you said that the federal defendants were motivated by a desire to discriminate against the plaintiff because of his race and political activities with the black supremacy nation. Doesn't that allegation fall short of a legend that either Strickland or black deterred this plaintiff's political speech? Well, Your Honor, I think that Such was like a substantial motivating factor in Strickland or black's conduct. Well, to answer the first part of the question, Your Honor, it would be our contention that the fact that the federal and the state entities were able to file all of these responses, certainly they were able to put, it's not just a, it started off with a request for more specific pleadings. Then it went on to motions for summary judgment and then specifically 12b6 motions where they were able to argue the facts and they were arguing very specifically the facts of the case. I think we, it would be our assertion that under those circumstances, it's not as if they looked at this complaint and said what the heck is this? What does it mean? What are they, what are they alleging? It's very clear what was being alleged and they responded accordingly. It would be our assertion that what we got to here was basically a trial on the pleadings. It's whether she, the lower court believed it or not. Secondarily, we have shown that during the course of these border alliance group meetings that there was discussion of Mr. Aminrah's activities, that the specifics of the black supremacy nation were known and discussed, that articles about his activities were brought in and about what he was doing. And that is, again, we would assert would be enough information to make it plausible rather than conclusory that he, that this was based on 14th Amendment violations, it was based on malice. When you're looking at it, it's one thing to say if in these meetings they just brought in, well, at X date we have someone who said he sold drugs, on Y date we have this. When you're bringing in information about an organization that is political in its nature, that's stated premise and as was indicated in one of the articles that they had at the meeting, that the black supremacy nation organized amongst low income black men, young black men, that they were doing social service work, that they were doing political organizing, and the goal was to empower, that's where we think we would assert to the court that you get to the level, that there was something going on here other than just saying, well, this person's involved in criminal activities, so we need to take action. If you want to save some of your time. Yes, Your Honor, please. Just a little over two minutes. Okay. Thank you. Why don't we hear then from Cochise County. How are you gentlemen splitting this up? Are you just going to split the argument, the two of you? Yes, Your Honor. Okay. Okay, very good. Who's going first, Mr. Miskell?  Thank you, Your Honor. On behalf of the federal defendants in this matter, first of all, I want to make it clear that the federal defendants in this case never filed a motion for summary judgment. The federal defendants after the first complaint filed a motion for a more specific statement and then two motions to dismiss all based on the fact that the complaint on its face was insufficient and especially as to the federal defendants did not rise above the specter of an inclusory nature. Excuse me. For example, on the excessive force issue that the court has been talking about, there's no allegation. That is just against the county defendants, is it not? No, there's also a Fourth Amendment excessive force claim against the federal defendants. Okay. And there is absolutely no evidence or excuse me, no allegation as to what the federal defendants specifically did to result in excessive force. And as to the federal defendants, it's a Bivens action, which means it's personal liability, which means they have to show specifically what each individual defendant did that gives rise to liability. And there is simply just no allegation as to what Agents Black or Agents Strickland did that would give rise to liability. I guess what I'm struggling with on the excessive force claim, counsel, and again I must confess I was not aware the federal defendants were part of this, but it's on both occasions the search warrants that were executed on the plaintiff's home listed individual defendants that were either part of the SWAT team that entered the home after the SWAT team entered or took part in the planning for the SWAT entry. And there were allegations made that during the entry the listed individuals and the other law enforcement officers pointed their automatic weapons at plaintiff and his family and threatened to shoot them if they were not cooperative. Now, how he would fare ultimately, I have no idea. But we're talking about a pleading issue here. And I guess I'm struggling with the fact that prediscovery, at least with respect to the county defendants, which at least the ones I'm understanding were involved here, why they have not stated a cause of action solely for purposes of going forward, not for ultimate disposition of this matter. I don't know whether the federals have any, federales have any response to that  I would actually defer to the county on that. As far as the federal defendants, the government's position is, the federal government's position is there's simply no allegation of what they personally did. In fact, the complaint alleged. I have a question. Okay. Don't the plaintiffs allege that Strickland and Black's investigation provided the essential information in state and federal court and that I think the quote is that they provided information to state officials that directly led to plaintiff Rob being charged with quote the above listed offenses. So isn't that sufficient to put you on notice with some beyond the speculative level of what Strickland and Black did? I would say no, Your Honor, because it does not allege. I mean, providing information to a prosecutor, that's what a federal agent does. That's his job. And to the extent that they're basically alleges they investigated him and provided the results of the investigation to the appropriate authorities. That doesn't allege something for which they are liable. So again, it's the lack of an allegation of what the federal defendants personally did that leads to, the complaint not being or properly being dismissed by the district court. Unless the court has any other questions about the federal defendants, I'll defer to the attorney for the county.  Good morning, Your Honors. Good morning. Good morning. John Kastner for Apelli, Cochise County Defendants. It seems the direction and the issue that the court has in this particular case is whether the plaintiff has properly pleaded a claim for excessive force. Yeah, and that's really the only one that I'm troubled with right now because it is ultimately a factual issue of whether there was too much force involved. I mean, it's clearly alleged that there was force involved pointing the gun at the family and specifically pointed weapons at the plaintiff and his family and threatened to shoot them if they were not cooperating. Now, that's all in the eye of the beholder, of course. And I have no idea what would happen going forward. But given this case, given what's involved in the pleading, as with respect to the county defendants, I'm interested in why they have not pleaded a cause of action to be determined through a discovery and having a finder of fact ultimately determine this. But why haven't they pleaded a cause of action? Well, there are two cases that I found regarding the pointing of guns in the Ninth Circuit that have been instructive to me in analyzing this issue and in preparing specifically for this oral argument, Your Honor. The first one is Fuller v. Vines, 36 Federal 3rd, 65, a 1994 case out of the Ninth Circuit. And then Robinson v. Solano County, which is 278 Federal 3rd at 1007, and that's a 2002 case out of the Ninth Circuit. And both of those cases discuss the Mendenhall test in determining, as you've indicated, the factual issue as to whether a seizure, and in this case the pointing of a gun, amounts to a seizure. The issue obviously here is whether the facts as they're pleaded are sufficient under Iqbal and more recently in the Ninth Circuit, Moss v. U.S. Secret Service. I was on that case. I know about that one. Then you know about that. The Moss v. Secret Service case, Your Honor, as you know, stands for the proposition that the Ninth Circuit has expressly adopted formally in the Iqbal standards for purposes of civil rights cases in the Ninth Circuit. And in that case, as in Iqbal, to survive a complaint, excuse me, for a complaint to survive a motion to dismiss, the non-conclusory factual content and reasonable inferences must be plausibly suggestive of a claim entitling the plaintiff to relief. And in this particular case, I believe what the Court determined is that this was the execution of a high-risk search warrant. The execution of a high-risk search warrant is factually distinguishable from the circumstances of Robinson v. Solano, in that in Robinson v. Solano, the officers responded to the scene. They responded specifically to the report of a man with a gun. Mr. Robinson had been in the neighborhood with his shotgun and I believe he shot some neighbor's dogs, in fact. The police responded, but by the time they got there, they could clearly see that he didn't have any weapons. In fact, his shirt was open, he was standing in his driveway, and there was nothing in his hands. This is a different situation. This is a high-risk entry, and all high-risk entries necessarily require a degree of fear, if you will. That's the purpose of them. Counsel, if I could ask you just one question. Even if it's a high-risk entry, why doesn't it state a claim that the level of force used was excessive under the circumstances? And why isn't it a factual question that should proceed to summary judgment as to how high-risk a situation it really was? Well, as Your Honor has framed it, I guess I would have to concede, but I think the point of this is that it's the under-the-circumstances situation, and the under-the-circumstances have been pleaded in this case. This was a high-risk warranted entry that was conducted after a two-year investigation, and that, too, was pleaded by the plaintiff. The fact that, and again, assuming it's true, the fact that the Cochise County defendants entered Mr. Ra's home with their guns drawn and pointed them at the occupants of the home, I think is the very nature of a high-risk entry. Aren't you drawing a conclusion from these facts? The issue here is whether there are factual allegations that are sufficient to constitute an excessive force claim. That's the issue here. The issue here is not whether there was, in fact, excessive force. And the argument that you appear to be making is, well, since this was a high-risk situation, it was okay, and the force was not excessive. You seem to be making that claim. Have I misread your argument? No, sir. I don't think you have. And what I'm saying is that in the situation as alleged by the plaintiff, in the case of a high-risk warranted entry where there's no allegation, and you'll have to forgive me, I'm forgetting the citation to a case that involved another high-risk entry, where an officer threw a flashbang into a home and it actually struck somebody resulting in a physical injury. What I'm saying, Your Honor, is that in a situation where there's a high-risk entry, a warranted high-risk entry, and officers have their guns drawn and are pointing them at the occupants, I don't believe that that states a claim for excessive force. You're saying per se, if it's a high-risk entry, you can't plead a cause of action for excessive force. That's what I'm hearing you say. Well, that's actually not what I'm saying. What I'm saying is in a situation with a high-risk entry where officers are alleged to have pointed their guns at the occupants, not combined with some physical injury or things of that nature or other specifically pleaded facts would suggest that the level of force was excessive under the circumstances. And in this case, the circumstances was the warranted entry. But at least I would suggest that Robinson, Teckel, and a few others suggest that this is a factual inquiry. Now, you may ultimately be absolutely right, and the trier of fact may say, you know, what they did here under the circumstances was okay. But we're talking about the pleading stage, and I'm troubled about how on this particular point we get the county out of the woods because of what was alleged here. And I would say, Your Honor, that when you read the Robinson v. Solano case, Solano County, excuse me, you could come to the conclusion that that case stands for the proposition that if a person pleads or alleges in a complaint that a gun was drawn and pointed at them, that that can state a claim for excessive force. That's what Teckel says too, right? Well, Your Honor, unfortunately, I don't recall reading that case. Now, that was a 2007 case denying summary judgment where multiple officers pointed their guns at the head of an unarmed 11-year-old boy. I did come across that case, Your Honor. I apologize. Bottom line, I think we get your point. I don't think any of us are going to agree that it's a per se situation. We will wrestle with this point, but we appreciate your presentation. You're over your time, so we're going to have to end that. But we thank you for your presentation, and we'll hear now from Mr. Catone. Thank you, Your Honors. Thank you very much. Thank you again, Your Honors. I guess I just wanted to throw into the mix on the excessive force that you're correct, Your Honors, that I think that we've pled sufficiently, and I think that we add also the facts that were pled, that there were two entries in September of 2005 into the Amin Ra Residence, one that led to charges being dismissed, and then shortly thereafter they come in in the same sort of manner. So to get up today and say that it was per se, it was a risk to the high-risk entry, I think, negates the issue. But again, it's ‑‑ Counsel. Counsel. Yes, Your Honor. Just to clarify, I haven't looked at every ounce of the pleadings, but I assume that your complaint did not allege that entry into your client's house was a high-risk situation for police. We did not, Your Honor, because certainly the officers during this two-year investigation knew who my client was. They knew that he had family members in there. There was no indication that there were all sorts of weapons or that he had used weapons. That was part of our contention in the pleadings, Your Honor, that to say this was a high risk was, well, that's very subjective in nature, and again, it allowed them to come in in the manner that they did, hyperaggressive, militaristic, with weapons pointed, and that was just part of the pattern of harassment or civil rights violations against my client. Okay. One question that might be totally irrelevant here, but just I haven't understood it, and don't answer if the record doesn't tell us, but does the record tell us why your client did not go to trial on the claims that were not dismissed, that is, that he just stipulated could be dismissed? Your Honor, the only claim, the majority of the claims had been dismissed by the judge. The only claim that was left in place was a Fourth Amendment regarding the placing of poll cameras and how the county was involved in that, and after talking with my client, we realized that obviously for the sake of judicial economy and for his own, for our own purposes, that it was best to voluntarily dismiss and to get to the Court of Appeals for the majority of our claims. Great. Thank you. Thank you very much, Mr. Gattone. Your time is also up. We thank both parties for their presentations. Thank you, Your Honor. And the case of Amon Ra versus Cochise County et al. is submitted.
judges: Marbley, Gould, Smith M.